Larry LYONS, Petitioner–Appellant,

v.

OHIO ADULT PAROLE AUTHORITY,
et al., Respondents–Appellees.

No. 96–3489.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1996.

Decided Jan. 22, 1997.

Larry Lyons (briefed), Lebanon, OH, pro se.

Steven S. Nolder (argued and briefed), Kimberly M. Skaggs, Federal Public Defender's Office, Columbus, OH, for Larry Lyons.

Stephanie Lynn Harris, Asst. Atty. General (argued and briefed), Office of the Attorney General of Ohio, Columbus, OH, Lillian B. Earl, Office of the Attorney General of Ohio, Cleveland, OH, for Ohio Adult Parole Authority, Margarette T. Ghee, Anthony J. Brigano.

Before: JONES, RYAN, and MOORE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which JONES, J., joined. RYAN, J. (pp. 1076–78), delivered a separate concurring opinion.

MOORE, Circuit Judge.

Petitioner–Appellant Larry Lyons appeals the denial of his habeas corpus petition. This appeal requires that we, for the first time, interpret several provisions of the recent statutory amendments to the federal habeas corpus framework. As explained below, we hold that district courts have the power to issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (codified, inter alia, at 28 U.S.C. § 2244 et. seq.) [hereinafter "AEDPA" or "the Act"]. Because the district court's certificate of probable cause failed to comply with the requirements for certificates of appealability under the Act, we remand the case to the district court to issue a new certificate of appealability.

## I. FACTS AND PROCEDURAL HISTORY

In 1984 Lyons was convicted in Ohio state court of aggravated robbery and sentenced to ten-to-twenty-five years imprisonment. Ten years later, in May 1994, Lyons was paroled. His freedom was short-lived: in June he was arrested for attempted petty theft. He quickly posted bond but, when he failed to appear in court to answer the charge, the state declared him a parole-violator-at-large. On August 3, Lyons was again arrested, and charged with theft and ob-

structing official business. This time, he was not released on bond; he has been incarcerated ever since. Instead, he was notified that he was in danger of having his parole revoked because of the theft charges and for failing to return to his halfway house.

■ Lyons pleaded guilty to all three offenses—theft, petty theft, and obstruction—and did not challenge them on direct appeal. He received thirty days in jail for one offense and suspended sentences for the other two. Meanwhile, the Ohio Adult Parole Authority was moving to revoke Lyons's parole. In August Lyons had signed a form waiving his right to an "on-site" revocation hearing; the form stated that this hearing would occur within sixty days or, if Lyons was "unavailable," within a reasonable time. Lyons became "available" to the Parole Authority when he was sentenced for the misdemeanors[1] on October 6, an event which had little immediate effect in his life: he remained in the county jail until November 4, when he was transferred to the state prison in Orient, Ohio.

Soon after arriving at the prison in Orient, Lyons began challenging the revocation of his parole. On November 8 he filed an administrative motion asking that the revocation be set aside. The next month, he filed an action in mandamus, or in the alternative for a writ of habeas corpus, in the Ohio Supreme Court, alleging that the state's failure to grant him a final parole revocation hearing within sixty days of his arrest violated a "protected liberty interest." Dist.Ct. Order at 3. Lyons attempted to amend his original pleading, but failed to get the requisite permission to do so. The Ohio Supreme Court dismissed the action without opinion on January 18, 1995.

On January 5, 1995, Lyons was finally given a formal parole hearing. The parole board revoked his probation based purely on the three misdemeanor convictions but dismissed the parole violations based on uncharged conduct. His case was continued until 1999. Lyons then asked a state appeals

---

1. "A declared adult parole violator is 'available for return' within the meaning of [Ohio Rev. Code. § ] 2967.15 when 'no action by the state is necessary to locate or take into custody a parole

violator, other than one who is incarcerated on another charge in the institution from which he was paroled.' " *In re Smith*, 32 Ohio App.3d 82, 513 N.E.2d 1387, 1389 (1986) (citation omitted).

court for permission to take a delayed appeal of his misdemeanor convictions, asking to withdraw his guilty pleas. This request and a subsequent motion for reconsideration were denied. Dist.Ct. Order at 4.

In May 1995, Lyons filed this petition for habeas corpus. The initial and supplemental petitions raised six claims for relief.[2] The district court found three of these to be procedurally barred, because Lyons had failed to raise them in his state habeas petition. *Id.* at 7. The court found the other three claims meritless and denied the writ on March 25, 1996. *Id.* at 12. On April 21, 1996, Lyons delivered his notice of appeal and request for a certificate of probable cause[3] to a prison official to file with the court. The district court issued a certificate of probable cause for the appeal on May 1, nearly a week after President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996 on April 24.[4]

## II. JURISDICTION AND STANDARD OF REVIEW

■ The district court had jurisdiction over this habeas petition by a state prisoner under 28 U.S.C. § 2254(a). Lyons is currently imprisoned because his parole was revoked. The essence of his claim is that the misdemeanor convictions which led to this revocation are constitutionally invalid and that his revocation hearing violated his Due Process rights. To the extent these legal claims have merit, Lyons is "in custody in violation of the Constitution ... of the United States." 28 U.S.C. § 2254(a). *See Ex Parte Hull*, 312 U.S. 546, 550, 61 S.Ct. 640, 642, 85 L.Ed. 1034 (1941) (where petitioner's "parole was revoked and he was ordered to serve out his first sentence only because of the second conviction," he could challenge that second conviction in federal habeas petition); *Peyton v. Rowe*, 391 U.S. 54, 67, 88 S.Ct. 1549, 1556, 20 L.Ed.2d 426 (1968) ("[T]his Court has held that a prisoner whose first-sentence parole was revoked upon a second conviction could challenge the second conviction in a habeas corpus proceeding though he would not be released if he prevailed.") (citing *Hull*); *Brewer v. Dahlberg*, 942 F.2d 328, 334 (6th Cir.1991). The district court determined that Lyons had exhausted his state-law remedies, and the state does not question this determination. *See* 28 U.S.C. § 2254(b) (exhaustion requirement).

■ This court has jurisdiction over the district court's final order under 28 U.S.C. §§ 1291, 2253. All of the novel issues pre-

---

**2.** Lyons' six claims are:

1. The courts which accepted Lyons's guilty misdemeanor pleas failed to advise him of the nature of the charges against him or to warn him that guilty pleas could result in parole revocation.

2. He received ineffective assistance of counsel in the misdemeanor trials.

3. Under Ohio law, the parole authority lost jurisdiction over him when it failed to provide a revocation hearing within the sixty days specified in the notice it sent him.

4. The parole authority violated his due process rights by notifying him that he would have a revocation hearing within 60 days, but not providing one for more than 100 days.

5. The parole authority lacked jurisdiction to hold the final hearing while Lyons's challenge to the authority's jurisdiction was pending in the state supreme court.

6. The revocation of Lyons's parole violated his equal protection rights, because similarly situated parolees did not suffer revocation.

Dist.Ct. Order at 5; Petition for Writ of Habeas Corpus at 5 and Supp. Pleadings.

**3.** The Act changed the name of the required document from "certificate of probable cause" to "certificate of appealability." *Compare* 28

U.S.C. § 2253(c)(1) *and* FED.R.APP.P. 22(b) *with* 28 U.S.C. § 2253 (1995) *and* FED.R.APP.P. 22(b) (1995). *See* part III, *infra*.

**4.** Although the filing of a notice of appeal would usually divest the district court of jurisdiction over the case, it is apparently not uncommon for district courts to issue the certificate after the notice of appeal has been filed. *See Wilson v. O'Leary*, 895 F.2d 378, 382 (7th Cir.1990) ("In cases decided initially by the district judge, FED. R.APP.P. 22(b) requires an appellant to seek a [certificate of probable cause] from the district judge, commonly done after filing the notice of appeal; district judges' actions on CPCs cannot be thought blocked by the notice of appeal."); *Latella v. Jackson*, 817 F.2d 12, 13 (2d Cir.1987) ("[T]he more appropriate procedure for [appealing the denial of a habeas petition] is for an applicant to take an appeal by filing a timely notice of appeal, seek a certificate of probable cause, and then proceed with the appeal."); *Fabian v. Reed*, 707 F.2d 147, 148–49 (5th Cir.1983) (noting that certificate may be sought from district court after notice of appeal filed).

sented by the Act are purely legal, and are thus reviewed de novo. *United States v. Spinelle*, 41 F.3d 1056, 1057 (6th Cir.1994).

## III. ANALYSIS

The timing of Lyons's appeal makes this case more complicated than it would otherwise be. In order to prevent frivolous appeals, Congress has long required that state prisoners whose habeas corpus petitions are denied in federal district court obtain a certificate of probable cause before appealing that denial. *See Barefoot v. Estelle*, 463 U.S. 880, 892–93, 103 S.Ct. 3383, 3394–95, 77 L.Ed.2d 1090 (1983). When Lyons applied for a certificate of probable cause, it was well settled that a district court could grant such a certificate and that if it did issue one a prisoner could then appeal every claim raised in his petition to this court. *See Houston v. Mintzes*, 722 F.2d 290, 293 (6th Cir.1983) ("the grant of the certificate of probable cause by the district court, in spite of its purported limiting provision [in this case], brings before us the final judgment for review in all respects"). After the passage of the AEDPA, however, neither of these propositions is necessarily true: the Act requires that certificates of appealability "indicate which specific issue or issues" are found to be appealable, 28 U.S.C. § 2253(c)(3), and there is a question whether the Act divests district courts of the authority to issue any such certificates. *Compare* 28 U.S.C. § 2253(c)(1) (no appeal allowed "[u]nless a circuit justice or judge issues a certificate of appealability") *with* FED.R.APP.P. 22(b) (appeal "may not proceed unless a district or a circuit judge issues a certificate of appealability"). Before we can address the petition's merits, then, we must decide whether to apply these provisions of the AEDPA to this case.

The Supreme Court has provided the framework for this retroactivity analysis:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, ... it does not govern absent clear congressional intent favoring such a result.

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). Thus, we must first look to the statute's text for an expression that the AEDPA should, or should not, apply to pending cases. Absent an expression by Congress of the statute's proper reach, we must determine what change, if any, the new legislation makes to the controlling law. We must then decide whether applying the new law to the pending case would have an impermissible retroactive effect by impairing a party's rights when he acted or imposing new liabilities or duties with respect to past conduct. *See id.* at 270, 114 S.Ct. at 1499 ("The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.").

### A. Effective Date and Retroactivity

■■ As a preliminary matter, we hold that the Act took effect on April 24, 1996. "It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 846, 112 L.Ed.2d 919 (1991). There is nothing in AEDPA which can be construed as a "clear direction" that this should not be the case. *See Qasguargis v. INS*, 91 F.3d 788, 789 (6th Cir.1996) (order) ("No specific effective date was provided for [the relevant AEDPA provision,] § 440(a), and it accordingly took effect upon the date of enactment."); *Reyes v. Keane*, 90 F.3d 676, 679 (2d Cir.1996) (applying AEDPA certificate of appealability provision to pending non-capital state-habeas case);

*Hatch v. Oklahoma*, 92 F.3d 1012, 1014 n. 2 (10th Cir.1996) (assuming, in absence of explicit "effective date," that AEDPA was effective when enacted).

■ The next question—whether Congress expressed any clear intent that the relevant parts of the new law be applied to pending cases—is only slightly more difficult. Section 107(c) of the Act states that § 107(a) applies to pending capital cases; Lyons asks us to infer from this that the Act does not apply to pending non-capital cases. We reject this line of reasoning for several reasons. First, this type of negative inference argument presupposes a well-crafted piece of legislation, which the AEDPA is not. *See United States v. Bass*, 404 U.S. 336, 343–44, 92 S.Ct. 515, 520–21, 30 L.Ed.2d 488 (1971) (rejecting argument based on structure of other legislation where amendment in question was "hastily passed" and thus could not be expected to "dovetail neatly" with other provisions of law); Larry W. Yackle, *A Primer on the New Habeas Corpus Statute*, 44 Buff. L.Rev. 381, 381 (1996) (hereinafter *"New Habeas Corpus"*) ("The new law is not well drafted.").[5] Second, it is likely that "the specification of applicability to pending cases in section 107 reflects only Congress's explicit concern as to death penalty cases, and carries no negative implication as to other habeas cases." *Reyes*, 90 F.3d at 679.[6] Finally, Lyons's argument here is similar to, but weaker than, the one which the Supreme Court rejected in *Landgraf. See Landgraf,* 511 U.S. at 259, 114 S.Ct. at 1494 (rejecting argument that "because Congress provided

specifically for prospectivity in two places .... we should infer that it intended the opposite for the remainder of the statute"). No other provision in the AEDPA intimates whether the Act should apply to pending cases. Thus, there is no clear statement from Congress regarding the Act's proper reach.

## B. Effect of the New Law on Authority to Issue Certificates of Appealability

Before we can decide whether applying the new habeas appellate procedure to Lyons's petition would have retroactive effect, we need to determine what this new law is. The major question here is whether, under the AEDPA, district courts have the authority to issue certificates of appealability. As usual, we begin our analysis with the text of the statute.

The Act's two provisions governing the issuance of certificates of appealability are in direct conflict with each other. Section 102 of the Act provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." AEDPA § 102, codified at 28 U.S.C. § 2253(c)(1). However, Federal Rule of Appellate Procedure 22(b), as amended by section 103 of the Act, expressly allows district judges to issue certificates of appealability, and sets out the procedure for issuance in considerable detail.[7]

---

5. Professor Yackle continues: "[The AEDPA] bears the influence of various bills that were fiercely debated for nearly forty years.... The result, I am afraid, is extraordinarily arcane verbiage that will require considerable time and resources to sort out." *Id.*

6. *See, e.g.,* Statement by President William J. Clinton upon Signing S.1965 (1996), *reprinted in* 1996 U.S.C.A.A.N. 961–1 ("I have long sought to streamline Federal appeals for convicted criminals sentenced to the death penalty."); 141 Cong. Rec. S4590–93 (daily ed. March 24, 1995) (statement of Sen. Specter, co-sponsor of Act) (bill designed to address "one of the most serious aspects of the crime problem: the interminable appeals process that has made the death penalty more a hollow threat than an effective deterrent"); 141 Cong.Rec. H1400 (daily ed. Feb. 8,

1995) (statement of Rep. McCollum) (intended to "curtail[] the seemingly endless appeals of death-row inmates" while maintaining "full constitutional protections"); *id.* at H1402 (statement of Rep. Young) (intended to "create consistent and fair procedures for [death penalty] application, and to streamline the current appeals process"). *See also* Yackle, *New Habeas Corpus* at 448 (Congress passed Act "primarily to make procedural adjustments meant to streamline and expedite the processing of cases").

7. Fed.R.App.P. 22(b) as amended by § 103 of the Act provides "Certificate of Appealability—In a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of appealability

The text of the Act thus presents us with a rare but difficult form of ambiguity: two parts of the same statute seem to require quite different procedures for appeal. Our task, then, is to decide which of these procedures is the one intended by Congress.

### 1. Prior Rule Making and Case Law

The only two circuits which have as yet resolved this inconsistency have done so by rule making rather than adjudication.[8] The First and Seventh Circuits have both promulgated circuit rules allowing district courts to issue certificates of appealability and in fact requiring that petitioners apply initially to the district court, rather than to the court of appeals, for such certificates. 1st CIR.R. 22.1(b) (Interim Rule) ("In this circuit, ordinarily neither the court nor a judge thereof will initially receive or act on a request for a certificate of appealability if the district judge who refused the writ is available unless an application has first been made to the district court judge."); 7th CIR.R. 22.1(b) ("Every request for a certificate of appealability must be made initially to a judge of the district court."). In the Seventh Circuit, the district court's issuance of a certificate of appealability allows the appeal to go forward. The First Circuit, however, has adopted a mandatory two-step process and requires that "[o]nce the district court *grants or denies* a certificate of appealability, the petitioner should promptly apply to the court of appeals for issuance of a certificate of appealability." 1st CIR.R. 22.1(c) (Interim Rule) (emphasis added). It is only this second certificate of appealability, issued by the circuit court, which allows an appeal. *Id.* ("The

effect of a denial is to terminate the appeal."). The two circuits' new local Rules thus give conflicting answers to the question before us.

Both courts emphasize that their respective local Rules 22.1 do not necessarily embody the procedure which Congress intended in the AEDPA. *See* 1st CIR.R. 22.1 Interim Processing Guideline I(B) ("In adopting this two-step process as an interim measure, we do not now finally determine how any ambiguity in the amendments will be interpreted, but rather leave the matter for comment during the rule making process, 28 U.S.C. § 2071, or development in the course of litigation."); 7th CIR.R. 22.1 1996 Note ("Because some potential for doubt remains, however, the new Circuit Rule 22.1(c) calls on every district judge to take a position on the merits, even if the judge believes that the new § 2253(c)(1) deprives the district court of the ability to issue a certificate."). The local Rules are instead meant to allow habeas appeals to proceed in an orderly manner until the question can be settled more firmly. Since we have decided to try to provide a resolution to this quandary through adjudication, we take note of our sister circuits' provisional solutions and continue our analysis.

The district courts that have examined this issue squarely have arrived at conflicting decisions. For example, in *Houchin v. Zavaras,* 924 F.Supp. 115, 117 (D.Colo.1996), the court held that it did have the authority to issue a certificate of appealability, on the grounds that Rule 22 specifically addressed district courts and authorized them to issue certificates of appealability, whereas § 2253 "applies by its wording only to circuit justices

---

pursuant to section 2253(c) of title 28, United States Code. If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue. The certificate or the statement shall be forwarded to the court of appeals with the notice of appeal and the file of the proceedings in the district court. If the district judge has denied the certificate, the applicant for the writ may then *request issuance of the certificate by a circuit judge.* If such a request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request

for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals. If an appeal is taken by a State or its representative, a certificate of appealability is not required."

8. After this opinion was drafted, the Eleventh Circuit concluded, as we do, that under the AEDPA district courts have the authority to issue certificates of appealability, and that the certificate of appealability provisions apply to pending § 2254 cases, at least in that case where no application for a certificate was filed before the Act's effective date. *Hunter v. United States,* 101 F.3d 1565 (11th Cir.1996) (en banc).

and judges," and does not prohibit district judges from issuing certificates. This reading of § 2253, however, does not address the question of whether a certificate of appealability issued by the district court gives us jurisdiction over the appeal. *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.").[9]

Another district court came to the opposite conclusion. In *Parker v. Norris*, 929 F.Supp. 1190 (E.D.Ark.1996), the court, after noting that the Act's legislative history "shines absolutely no light on this patently apparent conflict," and agreeing with the *Houchin* court that " 'it is unlikely contemplation played any role at all' in the drafting of these particular amendments," held that, because Rule 22 specifically refers to § 2253, the procedures of that statute control. *Id.* at 1192. The *Parker* court concluded that Congress simply failed fully to amend Rule 22 to conform to the amendments to § 2253(c). *Id.* at 1193.

We do not find this reasoning persuasive.[10] Rule 22(a) does state that "[t]he applicant may, pursuant to section 2253 of title 28, United States Code, appeal to the appropriate court of appeals from the order of the district court denying the writ," and Rule 22(b) states that an appeal requires that "a district or a circuit judge issue[ ] a certificate of appealability pursuant to section 2253(c)." However, the remainder of Rule 22(b) clearly contemplates that district courts will issue certificates of appealability, requiring that "the district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue." FED.R.APP.P. 22(b). The Rule also provides that if a "district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge." *Id.* Thus, although this incorporation argument offers a plausible-sounding rationale for favoring the statute over the Rule, it really does no more than restate the issue as a conflict within Rule 22, and not just between the rule and the statute or between two parts of the statute. The basic question remains: does the retention in Rule 22(b) of a detailed framework including district court issuance of certificates of appealability indicate Congress's true intent, or does the "circuit justice or judge" language of § 2253(c)(1) indicate that Congress intended to preclude district judges from exercising this power?

### 2. Textual Analysis

We next look to our traditional tools of statutory construction to solve this puzzle. *See NLRB v. United Food and Commercial Workers Union*, 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987) ("On a pure question of statutory construction, our first job is to try to determine congressional intent, using 'traditional tools of statutory construction.' If we can do so, then that interpretation must be given effect...."); *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202, 4 L.Ed. 529 (1819) ("Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent unless the natural and common import of words be varied, construction becomes necessary...."). The most relevant of these tools are also the most basic: if possible, we must read the statute as a coherent whole and give effect to every word of the AEDPA. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); NORMAN J. SINGER, 2A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46.06 (5th ed. 1992) [hereinafter SUTHERLAND STAT. CONSTR.]. If that is not possible, "the construction that produces the greatest harmony and the least inconsistency is that which ought to prevail." *Id.* § 46.05 at p. 104 (citation omitted).

---

**9.** Other district courts have followed *Houchin* without additional analysis of the issue. *See Taylor v. Mitchell*, 939 F.Supp. 249, 258 (S.D.N.Y.1996); *Geiger v. Morton*, 1996 WL 361474 at *7 n. 9 (D.N.J. June 24, 1996); *Johnston v. Love*, 940 F.Supp. 738, 754 n. 1 (E.D.Pa. 1996); *Griffin v. Endicott*, 937 F.Supp. 832, 834 (E.D.Wis.1996).

**10.** We note, too, that we can find no other opinions which follow *Parker*.

These considerations lead us to believe that district courts retain the authority to issue certificates of appealability under the AEDPA. Section 2253(c)(1) can, albeit with considerable effort, be read to invest district judges with the authority to issue the certificates: if "circuit" in "circuit justice or judge" is read as the antecedent only of "justice" and not of "judge" then the phrase means "circuit justice or any judge." This is, indeed, a tortured interpretation, but a possible one. Rule 22, in contrast, can only be read as authorizing both district and circuit judges to issue certificates. The Rule refers to the "district judge who rendered the judgment," and provides a procedure for obtaining a certificate from a circuit judge "[i]f the district judge has denied the certificate." Rule 22(b) (emphasis added). If § 2253(c)(1) controls, then all of this explicit language in the present Rule 22(b) is superfluous and misleading, and must be ignored. If the Rule controls, then we need only modify the punctuation of § 2253(c)(1), or perhaps add an article.[11] *See Lake Cumberland Trust, Inc. v. U.S. EPA,* 954 F.2d 1218, 1222 (6th Cir.1992) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.") (quoting *Boise Cascade Corp. v. U.S. EPA,* 942 F.2d 1427, 1432 (9th Cir. 1991)); 2A SUTHERLAND STAT. CONSTR. § 46.06 ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous ... and so that one section will not destroy another unless the provision is the result of obvious mistake or error"); *id.* § 46.07 ("[W]ords or clauses may be en-

larged or restricted to harmonize with other provisions of an act.").

We also find some slight support for this position in the oft-quoted canon that specific provisions take precedence over more general ones. *See id.* § 46.05 at 105. Although § 2253(c)(1) and Rule 22(b) are equally specific in that they both explicitly govern the issuance of certificates of appealability, the Rule provides more specific procedures than does § 2253(c)(1). To the extent that this canon rests on the notion that greater detail and specificity indicate greater legislative attention to a particular provision, it would suggest favoring Rule 22(b) over § 2253(c)(1).

In the end, we find that these canons of statutory construction point toward giving effect to the lengthy and detailed provisions of Rule 22(b), rather than to the easily overlooked language of § 2253(c)(1).

### 3. Legislative History

Because this textual solution is not unassailable, we next examine the Act's background and legislative history. Certificates of probable cause have been a prerequisite to appellate review of denials of habeas petitions since 1908. *Barefoot v. Estelle,* 463 U.S. 880, 892 n. 3, 103 S.Ct. 3383, 3394 n. 3, 77 L.Ed.2d 1090 (1983). Before this year, both district and circuit judges could, and did, issue the certificates. *See* 28 U.S.C. § 2253 (1995); *Barefoot,* 463 U.S. at 893, 103 S.Ct. at 3394–95. Since at least as far back as 1982, however, there have been efforts in Congress to strip district courts of this authority and require petitioners to apply to the courts of appeals for the certificates. *See* proposed Habeas Corpus Reform Act of

---

**11.** If § 2253(c) were to read "a circuit justice or a judge," it would not conflict with Rule 22(b). Similarly, adding a pair of commas, so that the provision read "a circuit justice, or judge," would ameliorate the conflict. The note to the Seventh Circuit's new Local Rule 22.1 similarly argues that § 2253(c)(1) can be parsed to render it consistent with Rule 22(b). *See* 7th Cir.R. 22.1 1996 Note (provision in Rule 22(b) allowing district courts to issue certificates of appealability "implies that 'circuit justice or judge' in § 2253(c)(1) should be read as '(circuit justice) or judge' rather than 'circuit (justice or judge)'"). We do not, of course, purport to

rewrite the statute; rather this shows that Congress could more easily have overlooked minor errors in § 2253(c) than have ignored the entire text of Rule 22(b). *Cf.* 2A SUTHERLAND STAT. CONSTR. § 47.15 ("Although it has been frequently asserted that 'Punctuation is a most fallible standard by which to interpret a writing,' it is more satisfactory to treat the rules of punctuation equally with other rules of interpretation.") (citation omitted); *id.* § 47.38 ("In construing a statute, it is always safer not to add to or subtract from the language of a statute unless imperatively required to make it a rational statute.").

1982, S. 2216, 97th Cong., 128 CONG.REC. S4336–38, §§ 3, 4 (1982) (proposing amendment of § 2253 and Rule 22(b) to allow only appellate judges to issue certificates of probable cause). Throughout the 1980s and the first years of this decade numerous proposals would have amended habeas corpus procedure; most of these would have divested the district courts of the authority to issue the certificates. *Compare, e.g.,* proposed Habeas Corpus Reform Act of 1989, S. 811, 101st Cong., 135 CONG.REC. S811–01, §§ 3, 4 (1989) (proposing to amend § 2253 and Rule 22(b) to remove district courts from process) *with* proposed Omnibus Crime Control Act of 1991, H.R. 7892, 102d Cong., 137 CONG.REC. H7892–02, § 1107 (proposing to amend § 2253 so that only non-capital appeals require certificates of probable cause, issuable by either a district or a circuit judge); proposed amendment No. 2043 to S. 55, 102d Cong., 138 CONG.REC. S8002–02, § 207 (1992) (same). It is impossible to say whether these bills died in Congress because of, despite, or regardless of the changes they did or did not make to this aspect of habeas procedure. This history therefore does little to help decide the issue. *See* 2A SUTHERLAND STAT. CONSTR. § 48.01 at p. 302 ("[I]t should be remembered the statements made by persons in favor of a rejected or failed bill are meaningless and cannot be used as an extrinsic aid.").

The 1996 Act's legislative history is similarly unhelpful; to the extent it relates to the question of who may issue the certificates it serves to muddy rather than clarify. The record in Congress reveals that the conflict between § 2253(c) and Rule 22(b) is not the product of a last-minute compromise, but existed for more than a year before the bill's passage: the proposed amendments to § 2253 and Rule 22 have been in conflict since the spring of 1995. *See* S. 623, 104th Cong., §§ 3, 4 (1995) (amending § 2253 and Rule 22 inconsistently). *But see* Yackle, *New Habeas Corpus,* 44 Buff.L.Rev. at 390 n. 33 (failure to amend Rule 22 to conform with

§ 2253 is "almost certainly an oversight"). That the House version of the bill did not contain this inconsistency only adds to the confusion. *See* H.R. 729, 104th Cong., §§ 102, 103 (1995) (which would have amended both § 2253 and Rule 22 to allow only appellate judges to issue certificates).

At oral argument, the state emphasized that the Act's amendment to § 2253 specifically deleted that section's reference to district courts' authority to issue certificates of appealability. The amendment to § 2253 deleted the language "the justice or judge who rendered the order or," and retained the language "a circuit justice or judge." *Compare* § 2253 (1995) *with* § 2253(c)(1) (1996). This, the state claimed, demonstrates a clear intent to remove district judges from the process. This argument would be persuasive if we were attempting to determine only the meaning of § 2253, but nobody claims that § 2253 is itself unclear. Rather, the statute as a whole is ambiguous because of the conflict between § 2253(c) and Rule 22(b); additional evidence that § 2253 means what it clearly says is superfluous.

The other relevant part of the Act's legislative history is even more puzzling. On April 4, 1996—almost two weeks before the final votes on the bill in the House and Senate [12]—the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States sent a letter to Representative John Conyers, the ranking minority member of the House Judiciary Committee, pointing out the conflict between Rule 22(b) and § 2253(c). The letter noted that "the courts will have a nearly impossible task" of resolving the conflict, and suggested two alternate amendments which would resolve the conflict one way or the other, respectively. The committee apparently ignored the letter; in any case, no change was made, and there is no record of any response. In the end, then, none of the Act's legislative history gives any indication as to how Congress would decide this issue.

---

**12.** The Senate passed the final bill on April 17, the House on April 18. *See* 1996 U.S.C.A.A.N. 924. Both houses subsequently passed resolutions correcting errors in the Act after this. *See* S.Con.Res. 55, 104th Cong. (1996) (correcting technical errors in the AEDPA); 142 CONG REC. H3744–01 (April 24, 1996) (same). President Clinton signed the bill, including the technical amendments, on April 24, 1996. 110 Stat. 1214.

### 4. Statutory Purpose and Policy

We next look to see whether the statute's purpose can help us decide the text's meaning. Congress enacted the AEDPA to streamline habeas corpus process, particularly in capital cases, without violating prisoners' due process rights. *See supra* note 6. Congress would thus appear to favor a reading of the statute which would expedite the appeals process.

On the one hand, allowing district judges to issue certificates of appealability may have inefficient aspects. If a district judge refuses to issue a certificate, the petitioner may seek a certificate from a circuit judge, adding another time-consuming step to the process. *See* FED.R.APP.P. 22(b); Ira P. Robbins, *The Habeas Corpus Certificate of Probable Cause,* 44 Ohio St.L.J. 307, 330 n. 153 (divesting district courts of power to issue certificates of probable cause would "alleviate the problem argued by some that review by the district judge and then the circuit judge has developed into two time-consuming quasi-appeals" before the merits are considered on appeal).

On the other hand, however, it seems clear that a district judge who has just denied a habeas petition will be able to evaluate that petitioner's request for a certificate of appealability more quickly than would a circuit judge fresh to the case. The district judge will have an intimate knowledge of both the record and the relevant law and could simply determine whether to issue the certificate of appealability when she denies the initial petition. *See Taylor v. Mitchell,* 939 F.Supp. 249, 258 (S.D.N.Y.1996) (denying writ and certificate of probable cause in single order); *Nichols v. Kelly,* 923 F.Supp. 420, 427 (W.D.N.Y.1996) (denying writ and certificate of probable cause in single order); *Huffman v. Moore,* 333 F.Supp. 1315, 1317 (E.D.Tenn. 1971) (including certificate of probable cause as part of opinion denying writ). *But see* note 4, *supra* (citing cases in which district judges ruled on the motion for a certificate of probable cause after the notice of appeal had been filed). Circuit judges, in contrast, would have to obtain and then spend time familiarizing themselves with the often-chaotic records and pro-se briefs before they could evaluate requests for certificates. *See* Robbins, *The Habeas Corpus Certificate of Probable Cause,* 44 Ohio St.L.J. at 330 (1983) (arguing that "the certificate was designed to free the appellate courts from reviewing frivolous habeas petitions, but the [proposed change] places them at the center of the decision regarding frivolousness and requires them to delve into the merits of the claims"). If the certificate were issued by a circuit judge, there is no guarantee that the same circuit judge would even sit on the panel assigned to hear the merits of the case. In this respect, then, allowing district judges to issue certificates of appealability would better serve the Act's purposes.

It is not clear to us whether restricting issuance of certificates of appealability to circuit judges or permitting district judges to issue certificates would necessarily lead to speedier resolution of habeas appeals. Courts are not well-suited to answering such empirical questions. However, we believe that efficiency considerations point toward permitting district judges to issue certificates of appealability, consistent with the detailed framework of Rule 22(b). *See* Robbins, *The Habeas Corpus Certificate of Probable Cause,* 44 Ohio St.L.J. at 332–333 (arguing that in order "both to fulfill further the congressional intent [to eliminate habeas petitions 'that are frivolous and cause unnecessary delay'] and to conform to the purpose of habeas corpus relief .... [d]istrict judges should retain the power to issue certificates.").

Lyons suggests that the principle of lenity, that ambiguous criminal statutes should be construed narrowly, is relevant to this discussion. *See generally United States v. R.L.C.,* 503 U.S. 291, 305–13, 112 S.Ct. 1329, 1338–42, 117 L.Ed.2d 559 (1992) (discussing rule of lenity). We do not believe this principle applies per se, because neither Rule 22(b) nor § 2253 is a criminal statute. *Cf. id.* at 305, 112 S.Ct. at 1338 ("rule has been applied not only to resolve issues about the substantive scope of criminal statutes, but to answer questions about the severity of sentencing"). We do, however, share the underlying "instinctive distaste against men languishing in prison unless the lawmaker has clearly said

they should." *Id.* (quoting *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971), and HENRY J. FRIENDLY, BENCHMARKS 209 (1967)). Because Congress may have intended that prisoners still have the choice of asking the district court to issue a certificate of appealability, a court should hesitate take that right away from them. This lends some support to our conclusion that the AEDPA allows district courts to issue certificates of appealability.

■ Because neither the legislative history nor any overwhelming policy considerations support a contrary reading, we hold that district judges may issue certificates of appealability under the AEDPA. We emphasize that this is what we believe Congress intended, and that we, too, welcome the clarification of this statutory conflict sought initially by the Judicial Conference prior to the Act's passage.

### 5. General Showing Required for Certificates of Appealability under the AEDPA

Before we can decide whether the new certificate of appealability provisions apply to Lyons's appeal we must also determine whether these new certificates of appealability require a different general showing than did the former certificates of probable cause. When Lyons filed his application for a certificate of probable cause he assumed that he had to make a "substantial showing of the denial of [a] federal right" before a certificate would issue. *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (alteration in original). To require that his pre-Act request meet a higher burden under the new Act would raise obvious retroactivity concerns under *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). It seems clear, however, that, *at least so far as this* case is concerned, the AEDPA merely codifies the *Barefoot* standard. The new law states that certificates may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because there is no indication that Congress intended to change the standard, its use of the language from *Barefoot* indicates an endorsement of that case's approach. *See* 2A SUTHERLAND STAT. CONSTR. § 45.15 ("[T]he legislature's use of statutory language similar to that used in a prior judicial decision should constitute legislative approval of that decision."). The AEDPA thus makes no change to the general showing required to obtain a certificate, and, aside from the new specificity requirement discussed below, essentially makes only a change in nomenclature from a "certificate of probable cause" to a "certificate of appealability." [13] *Accord Herrera v. United States,* 96 F.3d 1010, 1012 (7th Cir.1996); *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996); *Lennox,* 87 F.3d at 434–35. *But see Williams v. Calderon,* 83 F.3d 281, 286 (9th Cir.1996) (referring in dicta, without any discussion, to "the Act's more demanding standard" for the issuance of a certificate of appealability).

### 6. Retroactivity under *Landgraf* of Specificity Requirement for Certificates of Appealability

The AEDPA, then, affects neither the authority of district courts to issue certificates of appealability nor the general showing necessary to obtain such a certificate. The new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable, 28 U.S.C. § 2253(c)(3), i.e., which claims present a "substantial showing of the denial of a constitutional right." § 2253(c)(2). The final question we must address is whether applying this new specificity provision to Lyons's appeal would have

---

**13.** Because Lyons does not raise any non-constitutional federal claims, we need not address the statute's substitution of "constitutional right" for *Barefoot*'s "federal right," except to note that it may introduce another conflict into the statute. *See* 28 U.S.C. §§ 2254, 2255 (allowing collateral attack by state and federal prisoners, respectively, imprisoned "in violation of the Constitution or laws" of the United States) (unchanged by AED-

PA). *But see Lennox v. Evans,* 87 F.3d 431, 434 (10th Cir.1996) (AEDPA did not change law because the "decision on a motion for a certificate for probable cause must cohere to the principle that a federal habeas court does not review a state conviction for legal error in a broad sense, but only for federal constitutional error"), *cert. denied,* —— U.S. ——, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997).

retroactive effect under *Landgraf* and would thus be improper.

In most, but not all, cases, new laws which affect only procedure or jurisdiction will not have an impermissible retroactive effect. *Landgraf,* 511 U.S. at 274–75, 114 S.Ct. at 1501–02. *See Qasguargis v. INS,* 91 F.3d 788, 789 (6th Cir.1996) (order). For the reasons set forth below, we hold that the new requirement that a certificate of appealability indicate which specific issues make the "substantial ·showing" ·of § ·2253(c)(2) falls well within the general rule and is not impermissibly retroactive.

As an initial matter, it is plain that retrospective application of this provision does not violate the Ex Post Facto Clause. The requirement that the certificate of appealability include a specification of appealable issues "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood,* 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990).

Retroactivity analysis is not a science. *See Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499 ("Any test of retroactivity will leave room for· disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity."). Although courts often state that the appropriate. test is whether application of a new law "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," *id.* at 280, 114 S.Ct. at 1505, there is more to *Landgraf* than just this. "[A] statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.' " *Id.* at 270 n. 24, 114 S.Ct. at 1499 n. 24 (quoting *Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922)). In

deciding whether such a statute has retroactive effect we must also consider, at a minimum, "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270, 114 S.Ct. at 1499.

We first address whether applying the Act would "impair rights a party possessed when he acted." Before this year, a prisoner who could convince a judge that one of the claims in his rejected habeas petition was substantial was thereby entitled to appellate review of all the claims in that petition. If the Act applies, however, a court of appeals will address only the issues which are specified in the. certificate of appealability. · The Act could, then, be seen as. impairing Lyons's right to have all his claims reviewed on appeal. However, "[n]o one has a vested right in any given mode of procedure." *Crane v. Hahlo,* 258 U.S. 142, 147, 42 S.Ct. 214, 216, 66 L.Ed. 514 (1922). *See Landgraf,* 511 U.S. at 275, 114 S.Ct. at 1502 (noting "the diminished reliance interests in matters of procedure"). If the district court were to certify only certain issues for appeal, Lyons could seek a broader certificate of appealability from a circuit judge.[14] Lyons thus retains the right to request appellate consideration of his entire petition, and the change to the law does not impair his rights.[15]

Similarly, applying the new law does not increase Lyons's liability for past conduct, because the law does not increase the punishment which attaches to Lyons's offenses. *Collins v. Youngblood,* 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990). Nor does the AEDPA *impose* new duties with respect to his past conduct. The documents accompanying Lyons's application for a certificate of probable cause included a clear statement of which issues he intended to appeal and argued that "the[se] issues are debatable among jurists of reason [and] a court could resolve [them] in a different man-

---

**14.** Rule 22(b) provides that the applicant may seek a certificate of appealability from a circuit judge if the district judge has denied the certificate. We believe that allowing a similar request to a circuit judge where the certificate is denied in part is consistent with this provision.

**15.** We need not decide whether applying these new provisions would be proper if Lyons's right to appeal were curtailed.

ner." The application was proper both before and after the AEDPA went into effect. It could, of course, be argued that Lyons might have better developed each issue or certain issues had he thought that the AEDPA would be applied. However, as noted above, *Landgraf* requires that we take into account the extent of the change in the law, which is, in this case, minor.

Our conclusion that the specificity requirement of the Act should be applied to this case also finds support in our prior decisions. In *Forest v. United States Postal Service*, 97 F.3d 137 (6th Cir.1996), Judge Jones held in an opinion for the court that the 1991 Civil Rights Act's extension of a statute of limitations should apply to a case where the defendant's discriminatory conduct predated the new law, in part because "the 1991 Act applies to [plaintiff's] conduct, the filing of the complaint, which occurred after the enactment of the statute." *Id.* at 140. Similarly, in the case now before us the new Act applies more to the district court's conduct than to Lyons's: § 2253(c)(3) requires only that the court issue a more detailed certificate than was required before. Just as new jurisdictional laws will regularly be applied to pending cases because "jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties,'" *Landgraf*, 511 U.S. at 274, 114 S.Ct. at 1502, (quoting *Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 100, 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)), so does § 2253(c)(3) address the court's responsibility. The district court thus should have followed the law in effect at the time it issued Lyons's certificate of probable cause.

We hold, then, that the provision of § 2253(c)(1) requiring that certificates of appealability specify which issues are appealable should apply to the case before us. We are aware that this ruling puts us squarely in conflict with the Seventh Circuit's holding in *Martin v. United States*, 96 F.3d 853, 855 (7th Cir.1996). In *Martin*, Chief Judge Pos-

ner held under quite similar circumstances that the new "certificate of appealability is not required for an appeal perfected before the effective date of the new statute." We agree with *Martin* that, under Federal Rule of Appellate Procedure 4(c), an inmate's appeal is "deemed filed when the prisoner hands the notice of appeal to the prison officials for filing." [16] *Martin*, 96 F.3d at 855. We do not, however, agree that requiring district judges to apply this portion of the AEDPA to petitions filed before April 24 "would attach a new legal consequence to a completed act." *Id.* The *Martin* decision does not explain the reasoning behind this conclusion, but instead directs us to *Landgraf*, 511 U.S. at 275 n. 29, 114 S.Ct. at 1502 n. 29, and to Judge Posner's opinion in *Reyes–Hernandez v. INS*, 89 F.3d 490, 492 (7th Cir.1996). The citation to *Landgraf* refers, we assume, to the Court's statement that "[a] new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime...." *Landgraf*, 511 U.S. at 275 n. 29, 114 S.Ct. at 1502 n. 29. The rule at issue in *Martin* and the case at bar does not, of course, concern the filing of anything; it directs the district court to issue certificates of appealability which are more specific than the old certificates of probable cause. Moreover, although Lyons (and Martin) had perfected their appeals by filing a notice of appeal and request for a certificate before the AEDPA's enactment, the district court had not yet issued certificates by the enactment date. Thus *Landgraf*'s footnote 29 regarding the retroactivity of applying a filing rule to an already-filed complaint does not apply here or in *Martin;* rather it would be applicable if the district court had issued a certificate of probable cause before the enactment date. The *Landgraf* footnote does not, then, really explain *Martin*'s conclusion that a court should not follow the current law when it issues a certif-

---

16. Under FED.R.APP.P. 4(c), a confined inmate's notice of appeal "is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing." The remainder of the provision indicates that this procedure con-

stitutes filing the notice of appeal. *Id.* ("In a civil case in which the first notice of appeal is filed in the manner provided in this subdivision (c)....").

icate of appealability. Nor is *Reyes–Hernandez* an apposite precedent.[17]

We note, too, that the approach taken in *Martin* seems incompatible with the Seventh Circuit's later en banc opinion in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc), *cert. granted*, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). The *Landgraf* analysis in *Lindh* seems to take as its touchstone a party's reliance on the old statute in conducting his affairs. *See id.* at 867 ("Lindh's litigating decisions were not affected by the difference between the versions of § 2254.... The new law therefore governs our consideration of Lindh's contentions."). *See also id.* at 863 ("We take it that under *Landgraf* a certificate of probable cause to appeal *issued* before April 24, 1996, authorizes an appeal, although after April 24 appeal depends on a 'certificate of appealability' under § 102 of the 1996 Act ...." (emphasis added). *Lindh* was decided eight days after *Martin* but does not mention the earlier case.

Our conclusion that the specificity requirement for certificates of appealability should apply to this case accords with the view of the Second Circuit. In *Reyes v. Keane*, 90 F.3d 676 (2d Cir.1996), the petitioner had applied for a certificate of probable cause in 1995, long before the AEDPA took effect. *Reyes*, 90 F.3d at 679. Nonetheless, the Second Circuit could "see no reason why the new [certificate of appealability] provision, with its procedural requirement of specifying issues warranting an appeal, should not apply" to the case, and viewed the change as "well within the category of procedural changes that pose no issue of retroactivity under *Landgraf.*" *Id.* at 680. For the rea-

sons discussed above, we agree with the *Reyes* court's conclusion as to this issue.

## IV. CONCLUSION

We hold that under the AEDPA, district courts have the authority to issue certificates of appealability and that these certificates must state which issues are certified for appeal. Because the certificate issued by the district court does not comply with this requirement, we believe it would be improper for us to examine the merits of Lyons's petition.[18] Accordingly, we remand the case to allow the district court to issue a proper certificate of appealability consistent with this opinion. If the district court believes that more information from the parties would be helpful, it can of course request it from them.

Accordingly we REMAND this case to allow the district court to issue a certificate that complies with the Act.

RYAN, Circuit Judge, concurring.

With something less than absolute certainty, I concur in my colleagues' conclusion that the district court in this case has the authority to issue a certificate of appealability permitting the petitioner to appeal the denial of his request for a writ of *habeas corpus*. I do not reach that conclusion, however, for all of the reasons enunciated in my sister's opinion; as a matter of fact, I disagree very strongly with some of them. The challenge, of course, is to determine the intent of Congress and the President in enacting and approving, respectively, the amendments to 28 U.S.C. § 2253 and Fed.R.App.P. 22(b).

---

**17.** *Reyes-Hernandez* addressed a different issue: Reyes–Hernandez had conceded deportability before the enactment of the AEDPA, an action he might well not have taken if he had known that a new statute would deny him judicial review of the decision of the Board of Immigration Appeals. 89 F.3d at 491. The case seems to rest on reliance. *See id.* at 492 ("[J]urisdictional and procedural provisions normally are applied to pending cases ... [because] [p]eople normally don't rely on such provisions in planning and conducting the affairs of life, and so the reliance interest which is the foundation of the interpretive principle limiting retroactive application is

not engaged."). There is no such reliance interest in the case before us.

**18.** If the district court had denied the certificate, Rule 22 would permit this court to issue one. The Rule does not, however, give us the authority to correct a faulty certificate sua sponte. FED. R.APP.P. 22(b) ("If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge.... If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals.").

## I.

### A.

Under ordinary circumstances the plain language of a statute should control the statute's interpretation. In this case, however, the relevant provisions of the Antiterrorism and Effective Death Penalty Act do not yield a plain interpretation. Whereas section 102 of the Act, amending 28 U.S.C. § 2253, provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal [of denial of a writ of *habeas corpus*] may not be taken to the court of appeals," section 103 of the Act, amending Rule 22(b), provides that such an appeal may not be taken "unless a district or a circuit judge issues a certificate of appealability."

I recognize that it is possible to read sections 102 and 103 of the Act in harmony by supposing that, in section 2253(c)(1), Congress intended the word "circuit" to modify only "justice" and not "judge." To my mind, however, this contortion is too extreme to be considered meaningful and I am unwilling to rely upon it merely to avoid the fairly unremarkable conclusion that the Act points in two directions at once. My resistance to this approach is fortified by the fact that, prior to the Act, section 2253 provided that "[a]n appeal may not be taken to the court of appeals ... unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause." Unless this passage was unnaturally redundant, the pre-Act phrase "circuit justice or judge" did not include the judges of the district courts.

I also reject the argument that Rule 22(b) does not conflict with section 2253 because it provides that the certificate of appealability should be issued "pursuant to section 2253(c)." To suppose that this clause renders a district court's issuance of a certificate unauthorized or, at the least, ineffectual, is to make nonsense of the great bulk of Rule 22(b)'s plain language.

To my mind, then, it is clear that, as amended, section 2253 excludes the district courts from the certification process while, at the same time, Rule 22(b) expressly includes them. In such circumstances, our usual course is to consider the statute's legislative history. Unfortunately, the legislative history pertaining to these amendments is not enlightening. Both parties before this court, and the courts that have previously considered the problem, have concluded that the legislative history does not speak specifically to the role of the district courts in the issuance of certificates of appealability. I have found no legislative history to upset this conclusion.

Unable to locate a precise statement of intent, both Lyons and the state have endeavored to find support for their positions in the undisputed but general congressional intent to make the *habeas* process more efficient. Indeed, both parties have suggested colorable reasons why efficiency concerns might favor their respective positions. However, whether district courts, appellate courts, or both courts acting in concert would be more or less efficient in the consideration of certificates of appealability is a legislative question. It is not within a court's competence to suppose Congress's intent by speculating as to the balance of these efficiencies.

Recognizing that the weighing of efficiencies is a peculiarly legislative function does not, of course, resolve the statutory conundrum before us. Rather, it leads me to the conclusion that the intended application of Rule 22(b) and section 2253 must be gleaned solely from an analysis of the present and past language of these provisions. To this end, it seems most likely that Congress either: (1) intended to delete the district court's authority in section 2253(c) but neglected to amend Rule 22(b) accordingly; or (2) intended to retain the district court's authority in Rule 22(b) but inadvertently deleted it in section 2253(c). The possibility that Congress intended to require both the district court and the circuit court to issue a certificate of appealability is one I reject because it offends the apparent meaning of *both* section 2253 and Rule 22(b).

I conclude that district courts are authorized to issue certificates of appealability and that, where the district court does issue such a certificate, "a circuit justice or judge" is not also required to do so. It seems to me more likely that Congress accidentally excluded

the district courts from section 2253 than it does that Congress intended this exclusion but failed to notice or remedy the substantial contradictory language of Rule 22(b). Had Congress made no changes whatsoever to Rule 22(b), the contrary result might be more reasonably inferred. In light of section 103 of the Act, however, there can be no doubt that Congress was cognizant of Rule 22(b).

Ultimately, the interpretation of the Act which includes the district court's involvement appears to me to be a less flagrant affront to the statutory language of section 2253(c) than a contrary conclusion would be to the language of Rule 22(b). This is, there can be no doubt, a sorry foundation for the construction of a statute. We do not, however, have the luxury of nondecision and, as I have argued, the alternative bases for interpreting the Act are either less sound or, worse yet, altogether improper.

I do not reach my conclusion in this case easily. In fact, my instincts argue against my conclusion. Congress has considered transferring the certification process from the district court to the circuit court many times in the last fourteen years. It is plausible that the new amendments were intended to effect this change and, in my judgment, it could well be more efficient to do so. But, as I have said, it would be inappropriate to impute to the enactors of the legislation my notions of judicial economy. Moreover, the many attempts over the years to remove the district courts from the certification process may, in the final analysis, just as easily portend another failure as they may a final success.

In my opinion, the amendments to section 2253 and Rule 22(b) are more reasonably read as retaining the district court's authority to certify *habeas* appeals to this court. Accordingly, I concur in my colleagues' judgment.

### B.

I also agree that the law of *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), means that the amended certificate of appealability provisions of the Antiterrorism and Effective Death Penalty Act of 1966 discussed above apply to this case. I agree that the case must be remanded to allow the district court to issue a certificate that complies with 28 U.S.C. § 2253(c)(3).