**Sammie TAYLOR, Petitioner,**

v.

**Kevin MYERS, Respondent.**

No. 01–2685–M1/A.

United States District Court,
W.D. Tennessee,
Western Division.

April 30, 2003.

Sammie Taylor, Clifton, TN, pro se.

ORDER DENYING MOTION TO AMEND ORDER DENYING MOTION TO STAY OR VOLUNTARILY DISMISS ORDER OF DISMISSAL ORDER DENYING CERTIFICATE OF APPEALABILITY AND ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

MCCALLA, District Judge.

## I. INTRODUCTION

Petitioner, Sammie Taylor, Tennessee Department of Corrections (TDOC) inmate

number 239182, an inmate at the South Central Correctional Facility (SCCF), in Clifton, Tennessee, filed a petition under 28 U.S.C. § 2254. By order entered March 28, 2002, United States District Judge James Todd denied petitioner's application to proceed *in forma pauperis* and directed him to pay the $5 filing fee. Petitioner paid the filing fee on April 18, 2002. When the petitioner filed his petition, he was incarcerated at the West Tennessee State Penitentiary and his custodian was Warden James Dukes. Thus, the respondent was recorded by the Clerk as James Dukes. Petitioner has now been transferred to SCCF and his custodian is Warden Kevin Myers. Accordingly, the Clerk shall delete any reference upon the docket to James Dukes and record Kevin Myers as the respondent, as the only proper respondent is the petitioner's current custodian.

## II. *PROCEDURAL HISTORY*

Petitioner was convicted by a jury in the Shelby County Criminal Court in 1994 of felony murder, especially aggravated kidnapping, especially aggravated robbery, and aggravated sexual battery. The trial court imposed an effective sentence of life imprisonment without the possibility of parole, plus sixty-two years. Taylor appealed the conviction and the Tennessee Court of Criminal Appeals affirmed. *State v. Taylor*, No. 02C01–9501–CR–00029, 1996 WL 580997 (Tenn.Crim.App. Oct.10, 1996), *perm. app. denied* (Tenn. Mar. 3, 1997). Taylor then filed a post-conviction petition, which the Shelby County Criminal Court judge denied after an evidentiary hearing. Taylor appealed and the Tennessee Court of Criminal Appeals affirmed. *Taylor v. State*, No. W1999–00977–CCA–R3–PC, 2000 WL 714387 (Tenn.Crim.App. May 26, 2000), *perm. app. denied* (Tenn. Dec. 4, 2000).

Taylor deposited his original petition in the prison mail system on August 23, 2001. The petition was received and filed by the Clerk on August 29, 2001. The Court construes and summarizes the claims presented as follows:

1. the trial court improperly denied the petitioner's motion to suppress his statements to police;

2. the trial court improperly denied the petitioner's motion to suppress evidence obtained in the search conducted at his home;

3. the trial court erred by waiting until after three alternate jurors were chosen and sworn to excuse an empaneled juror for cause;

4. his attorney provided ineffective assistance of counsel by:

   a) failing to meaningfully cross-examine the state's witnesses on his illegal arrest and statements;

   b) failing to meaningfully cross-examine the state's witnesses on the search of his home;

   c) failing to properly raise and argue the motion to remand his proceedings back to juvenile court; and

   d) failing to present psychological expert testimony at the sentencing phase of the trial.

On April 5, 2002, petitioner signed an amended petition, which was postmarked April 8, 2002, and received and filed by the Clerk on April 10, 2002. Petitioner raises the following issues in the amended petition:

4. his case was improperly transferred from Shelby County Juvenile Court to Shelby County Criminal Court;

5. the appointed referee of the Shelby County Juvenile was biased and without authority to transfer his case' to Shelby County Criminal

Court because he was not an elected official; and

6. the evidence was insufficient to convict him of rape.

## III. ANALYSIS

### A. Statute of Limitations

■ The three issues presented in the amended motion filed on April 10, 2002, were not raised in the original petition. Taylor's conviction was final on December 4, 2000. His deadline for filing a § 2254 petition was, thus, December 4, 2001. The mandate of Fed.R.Civ.P. 15(a), that a court freely grant leave to amend when justice so requires, has been interpreted to allow supplementation and clarification of claims initially raised in a timely § 2255 motion. *See Anderson v. United States*, No. 01–2476, 2002 WL 857742 at *3 (6th Cir. May 3, 2002); *Oleson v. United States*, No. 00–1938, 2001 WL 1631828 (6th Cir. Dec.14, 2001). However, once the statute of limitations has expired, allowing amendment of a petition with additional grounds for relief would defeat the purpose of the Anti-terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) (codified, inter alia, at 28 U.S.C. § 2244 et seq.)(AEDPA). *Oleson*, 2001 WL 1631828 at *3 (citing *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir.2000)) ("[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired."). *See also United States v. Pittman*, 209 F.3d 314, 317–18 (4th Cir.2000)

("The fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c).... Such a broad view of 'relation back' would undermine the limitations period set by Congress in the AEDPA") (citing *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir.1999)). Thus, the motion to amend the petition to add additional claims is DENIED.

### B. Motion to Voluntarily Dismiss Petition

On January 8, 2003, Taylor filed a motion to voluntarily dismiss his petition. Taylor alleges he "wishes to re-open his post-conviction relief to file post-conviction DNA Analysis Act of 2001." Taylor alleges that "this remedy was not available at the time [he] filed his original post-conviction petition." The motion to voluntarily dismiss the petition relates to Taylor's claim that the evidence was insufficient to convict him of rape.

■ The Sixth Circuit has approved dismissing only unexhausted claims presented in a habeas petition and staying the remaining claims pending exhaustion in a timely manner as a dismissal without prejudice could jeopardize the timeliness of a collateral attack. *Hill v. Anderson*, 300 F.3d 679, 683 (6th Cir.2002)(citing *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir.2001)). Taylor's DNA claim is exhausted, however.[1] Taylor merely failed to raise the claim in this petition in a timely manner.

---

1. Issues 4 and 5, raised in the motion to amend, were also exhausted during Taylor's direct appeal. Under 28 U.S.C. § 2254(a), a district court may entertain "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The threshold question in any federal habeas petition is whether the petition even raises such claims. *See, e.g., Tillett v. Freeman*, 868 F.2d 106, 108 (3d Cir.1989); *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir.1986); *Nelson v. Solem*, 714 F.2d 57, 60 n. 2 (8th Cir.1983); *Hall v. Iowa*, 705 F.2d 283, 287 (8th Cir.1983). Those issues were raised and addressed by the Tennessee Courts as claims of mistake of state law. In ruling against this petitioner, the Court of Criminal Appeals quoted and

Furthermore, the state courts have determined this issue to be without merit both in the direct appeal and the post-conviction proceedings. Taylor was not charged with or convicted of rape. Taylor was convicted of aggravated sexual battery, along with especially aggravated kidnapping, especially aggravated robbery, and felony murder. Taylor, by his own statements [2] admitted his guilt as to the kidnapping and robbery charges, but denied responsibility for the victim's death, and along with his co-defendants, denied raping or any sexual activity with the victim. The issue was raised first on direct appeal as a sufficiency of the evidence claim. The Tennessee Court of Criminal Appeals held:

The evidence clearly shows that the appellant actively participated in the kidnapping and, as such, he became accountable for all consequences flowing from the kidnapping. Concerning his conviction for aggravated battery, the testimony of the medical examiner,[3] the photographs of the victim's vaginal area, and the arrangement of her clothing [4] establish the occurrence of sexual contact. Obviously, there is no dispute that serious bodily injury occurred. After viewing the evidence in the light most favorable to the State, we conclude that, based on the appellant's participation in the events leading up to and following the sexual battery of Ms. Wilburn, especially in view of the fact that it was the

relied on Tennessee state statutory law governing juvenile court proceedings. *Taylor,* 1996 WL 580997 at *10–11. Thus, these issues were decided on adequate and independent state grounds and are not cognizable under § 2254. Furthermore, to the extent petitioner attempts to now frame a federal constitutional due process claim, he presents only general concepts and legal theories without discussion or demonstration of the applicability of those principles to the facts of his case.

2. Testimony at trial and Taylor's own statement to police revealed that when the victim drove up to her apartment, Taylor displayed a gun, confronted her, and forced her into the trunk despite her pleas of "[L]et me go, I won't tell." Co-defendant Tracey Davidson was present during the kidnapping. They drove to meet Willie Davidson, Barry Smith, and Antonio Byrd. Taylor was the only member of the group with a driver's license. Taylor then drove to the Tennessee Valley Authority steam plant on Plant road, a trip of thirty minutes, with the victim in the trunk during extremely hot July weather. Taylor stopped the car on a bridge near the plant. Taylor opened the trunk and Byrd "snatched [Ms. Wilburn] out and hit her." When the victim fell to the ground from Byrd's assault, Smith "started kicking her [u]ntil she stopped moving." At some point, Ms. Wilburn's clothes were partially torn off and an object was forcefully inserted into her vagina. All five

co-defendants deny any rape of Ms Wilburn. Medical testimony, however, indicates forceful penetration of the victim's vaginal area. After the victim had been severely beaten, especially about the head and neck, Willie Davidson announced: "I am fixing to run over her head." Wilburn was then run over by her own car. Afterwards, her body was dragged to the side of the bridge and thrown over. *Taylor,* 1996 WL 580997 at *2–3.

3. Dr. O.C. Smith testified regarding the victim's extensive injuries, which included "abrasions of the labia minora and the entrance of the vagina, indicating that on both sides of the vagina the delicate skin surface had been torn and abraded or scraped away. There was also a bruise at the entrance of the vagina ... That type of injury is going to be a friction-type injury in which some object has been pushing or sliding against the skin surface causing it to peel or crack away ...." *Taylor,* 1996 WL 580997 at *5.

4. Ms. Wilburn's white nursing pants were unzipped and pulled down around her knees. Her panties were torn in two and wadded under her left leg. Her yellow and white striped shirt and her bra were both pulled up. Additionally, there was a great deal of blood on the bridge in patterns suggesting that Ms. Wilburn's head had been crushed and her body dragged to the side of the bridge and thrown over. *Taylor,* 1996 WL 580997 at *3.

appellant who transported the victim to Plant Road, any rational trier of fact could have found that the appellant "acted with the intent to promote or assist in the commission" of aggravated sexual battery. *See* Tenn.Code Ann. § 39–11–402(2). Additionally, the requisite mental state may be proved by the acts and circumstances surrounding the appellant's conduct. Thus, even though he may not have had sexual contact with Ms. Wilburn, based upon his conduct and culpability, he is criminally responsible. Accordingly, we conclude that his convictions for felony murder and aggravated sexual battery are amply supported by the evidence.

*Taylor,* 1996 WL 580997 at *7–8.

Taylor then raised counsel's failure to pursue DNA testing during the post-conviction proceedings where counsel testified that "... as I recall there was nothing found on the victim that would have been there to test." *Taylor,* 2000 WL 714387 at *4. The Court of Criminal Appeals cited its holding on direct appeal and further held:

> Accordingly, DNA testing was not necessary to prove or disprove the appellant's criminal liability for the aggravated sexual battery upon the victim. Moreover, as the post-conviction court properly found, "there was not any semen or any material to perform a serological DNA test." Thus, trial counsel was not deficient in failing to request independent DNA testing. We conclude that the appellant has failed to meet his burden of establishing this allegation of counsel's ineffectiveness by clear and convincing evidence. This issue is likewise, without merit.

*Id.*

Accordingly, the issue was exhausted and is time-barred. Taylor's misguided argument that he was wrongly convicted of rape presents no basis for this Court to conclude that state courts will waive Tennessee's post-conviction petition statute of limitations and one-petition rule to further address this clearly meritless issue. *See* Tenn.Code Ann. § 40–30–202(a), (c)(1997). Taylor seeks dismissal of the petition, which is clearly improper. Furthermore, to the extent the motion can be construed as seeking a stay to pursue the DNA claim because it is unexhausted; the claim is clearly exhausted. Further post-conviction proceedings on any unexhausted claims in this petition are barred by Tennessee's post-conviction statute. Thus, the motion provides no basis for staying these proceedings. Therefore, the motion to voluntarily dismiss or in the alternative to stay the petition is DENIED.

### C. *Requirement of Exhaustion and Procedural Default*

■ A habeas petitioner must first exhaust available state remedies before requesting relief under 28 U.S.C. § 2254(b). Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. *See, e.g., Granberry v. Greer,* 481 U.S. 129, 133–34, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Rose v. Lundy,* 455 U.S. 509, 519, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *See also* Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. *Preiser v. Rodriguez,* 411 U.S. 475, 477, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

■ To exhaust these state remedies, the applicant must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him. *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray v. Netherland,* 518 U.S. 152, 162–63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)(citing *Picard,* 404 U.S. at 271, 92 S.Ct. 509). "[T]he substance of a federal habeas corpus claim must first be presented to the state courts." *Picard,* 404 U.S. at 278, 92 S.Ct. 509. A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." *Gray,* 518 U.S. at 163, 116 S.Ct. 2074.

■■ Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* When a petitioner raises different factual issues under the same legal theory he is required to present each factual claim to the highest state court in

order to exhaust his state remedies. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844–845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)(holding that exhaustion requirement mandates presentation of all claims to state court through discretionary review process). *See also Pillette v. Foltz,* 824 F.2d 494, 497–98 (6th Cir.1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts, without presenting each factual claim. *Pillette,* 824 F.2d at 497–98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). *Cf. Gray,* 518 U.S. at 163, 116 S.Ct. 2074.

■ Moreover, the state court must address the merits of those claims. *Coleman v. Thompson,* 501 U.S. 722, 734–35, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If the state court decides those claims on an adequate and independent state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner is barred by this procedural default from seeking federal habeas review, unless he can show cause and prejudice for that default. *See Wainwright v. Sykes,* 433 U.S. 72, 87–88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits

the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. *Coleman,* 501 U.S. at 752–53, 111 S.Ct. 2546; *Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Wainwright,* 433 U.S. at 87–88, 97 S.Ct. 2497; *Rust,* 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause and prejudice for the default in order to obtain federal court review of his claim. *Teague,* 489 U.S. at 297–99, 109 S.Ct. 1060; *Wainwright,* 433 U.S. at 87–88, 97 S.Ct. 2497. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. *Coleman,* 501 U.S. at 752–53, 111 S.Ct. 2546; *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Furthermore, in demonstrating cause for a procedural default, a petitioner must have either completely exhausted the claim that constitutes cause, or demonstrate cause and prejudice for that claim as well. *Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 1591–92, 146 L.Ed.2d 518 (2000).

A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. The petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Murray,* 477 U.S. at 496, 106 S.Ct. 2639). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup,* 513 U.S. at 327, 115 S.Ct. 851.

Claims 1, 2, 3, 4c and 4d are exhausted. Claims 4a and 4b, Taylor's contention that counsel was ineffective by failing to meaningfully cross-examine the state's witnesses on his illegal arrest, statements, and search, were not raised during the post-conviction proceedings and have never been substantively addressed by the Tennessee courts. Further presentation of claims 4a and 4b is now barred by both Tennessee's state post-conviction petition statute of limitations and by Tennessee's one-petition rule. *See* Tenn.Code Ann. § 40–30–202(a), (c)(1997). Thus, the claims are exhausted through Taylor's procedural default, and he has no avenue remaining for presentation of the claims due to the state statute of limitations on state post-conviction relief.

The Sixth Circuit has previously upheld the dismissal of a Tennessee prisoner's habeas petition as barred by a procedural default caused by failing to file within the Tennessee statute of limitations on post-conviction relief. *Hannah v. Conley,* 49 F.3d 1193, 1194–95 (6th Cir.1995) (construing first state statute). The Court construed that first post-conviction statute of limitations and stated "the language of Tenn.Code Ann. § 40–30–102 is mandatory." *Id.* at 1195. Petitioner's claims 4a and 4b are exhausted by this procedural default. He cannot, therefore, obtain habeas relief in this Court. *Crank v. Duckworth,* 969 F.2d 363, 365–66 (7th Cir.1992) (holding upon appeal after remand that attack on enhancing state sentence procedurally barred). This procedural default operates as a complete and independent procedural bar to federal habeas review of claims 4a and 4b. This Court must honor the state court's invocation of its procedural bar. *Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

■ To the extent Taylor contends his appointed trial attorney's performance constitutes cause, an ineffective assistance of counsel claim asserted as "cause" to excuse the procedural default of another claim can itself be procedurally defaulted. *See Carpenter*, 529 U.S. at 452, 120 S.Ct. 1587. Because Taylor never presented his claims of ineffective assistance in any post-conviction proceeding and thus, procedurally defaulted any claims of ineffective assistance, then he cannot use this claim as "cause" to excuse the procedural default of these issues. Accordingly, under *Carpenter*, this Court is precluded from considering this issue as cause to excuse Taylor's procedural default claims 4a and 4b in this petition. *Id.*

■ Furthermore, insofar as the petition may be construed as alleging ineffective assistance of post-conviction counsel constitutes cause and prejudice for his default, "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Thus, the failure of petitioner's counsel to raise these claims in the post-conviction petition could not amount to ineffective assistance amounting to cause for his procedural default of claims 4a and 4b in the post-conviction proceedings. *United States ex rel. Johnson v. People of State of Ill.*, 779 F.Supp. 81, 83 (N.D.Ill.1991). Taylor cannot establish cause and prejudice for his procedural default, and any claim of factual innocence is frivolous.

■ The Court next considers the exhausted claims. Issue 4b, Taylor's claim that his juvenile defender provided ineffective assistance during the proceedings which resulted in the transfer of his case from Shelby County Juvenile Court to Shelby County Criminal Court, were addressed on direct appeal as matters of interpretation and application of Tennes-

see statutes governing juvenile court proceedings. *Taylor*, 1996 WL 580997 at *10–11; *Taylor*, 2000 WL 714387 at *1. Accordingly, issue 4b was decided on adequate and independent state grounds and is not cognizable under § 2254. *See* 28 U.S.C. § 2254(a); *Tillett*, 868 F.2d at 108; *Martin*, 801 F.2d at 331; *Nelson*, 714 F.2d at 60 n. 2; *Hall*, 705 F.2d at 287.

■ Issue 3, Taylor's challenge to the trial court's method of empaneling the jury arises from the trial court's action in electing to wait until after three alternates were chosen to excuse a juror for cause. Taylor alleges this action denied him his right to an impartial jury and the trial court erred by refusing to grant a mistrial on this basis. The Sixth Amendment requires that the jury venire from which a jury is selected represent a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527–530, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Taylor made no more than a passing reference to the Sixth Amendment and the Tennessee Court of Criminal Appeals addressed the matter strictly as a procedural matter under the Tennessee Rules of Criminal Procedure. *Taylor*, 1996 WL 580997 at *17–18.

The only arguable federal constitutional content in the direct appeal was Taylor's argument that this action constituted double jeopardy. The Court of Criminal Appeals addressed the issue as an aside and matter of common sense, stating:

> that the twelve jurors were sworn before the alternates were selected. This argument is also meritless. "The discharge of a juror in a criminal case during the progress of a trial, after which another juror ... is impaneled will not authorize a plea of double jeopardy." *State v. Max*, 714 S.W.2d 289, 294 (Tenn.Crim.App.1986). Consequently, double jeopardy had not attached.

*Taylor,* 1996 WL 580997 at \*18. Taylor does not reassert his claim of double jeopardy in this petition.

■ Mere error in the application of state law is not cognizable in a federal habeas proceeding. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir.1993) (claims involving only state law not cognizable in federal habeas petition); *Oliphant v. Koehler,* 594 F.2d 547, 555 (6th Cir. 1979)(same). Issues 3 and 4c present no basis for federal habeas relief.

Twenty-eight U.S.C. § 2254(d) provides: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, this Court must first determine whether the state court adjudication of these claims in the post-conviction proceedings was either "contrary to" or an "unreasonable application of" "clearly established" federal law as determined by the United States Supreme Court.

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court set forth the standards for applying § 2254(d)(1). The majority emphasized that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. *Id.* at 404, 120 S.Ct. 1495.

Justice O'Connor, writing for a majority of the Supreme Court, explained the circumstances when a state-court decision may be found to violate the "contrary to" clause:

With respect to the first of the two statutory clauses, the Fourth Circuit held in [*Green v. French,* 143 F.3d 865 (1998),] that a state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.... The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of

this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause....

*Id.* at 405–06, 120 S.Ct. 1495 (citations omitted). "If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity." *Id.* at 407, 120 S.Ct. 1495.

The Supreme Court did not delineate with precision the contours of the "unreasonable application" clause. The majority stated:

For now, it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's "unreasonable application" clause.

*Id.* at 409, 120 S.Ct. 1495. The Fourth Circuit's decision in *Green* had identified a second category of decisions that it believed would run afoul of the "unreasonable application" clause:

Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

529 U.S. at 407, 120 S.Ct. 1495 (citing *Green,* 143 F.3d at 869–70). The Supreme Court remarked that "that holding may perhaps be correct," although "the classification does have some problems of precision." *Id.* at 408, 120 S.Ct. 1495. In any event, the Supreme Court recognized that ·it was not necessary to their decision "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)." *Id.* at 408–09, 120 S.Ct. 1495.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. The Supreme Court emphasized that the test is objective, rather than subjective:

The federal habeas courts should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case. The "all reasonable jurists" standard would tend to mislead federal habeas courts by focusing their attention on a subjective inquiry rather than on an objective one.

*Id.* at 409–10, 120 S.Ct. 1495.

Moreover, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410, 120 S.Ct. 1495. Thus,

[u]nder § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or in-

correctly. Rather, that application must also be unreasonable.

*Id.* at 411, 120 S.Ct. 1495.

Finally, § 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States." This new provision "expressly limits the source of law to cases decided by the United States Supreme Court." *Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000), *cert. denied*, 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001). As the Sixth Circuit explained:

> This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

*Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) (citing 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4261.1 (2d ed. Supp.1998)); *see also Harris*, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412, 120 S.Ct. 1495.

In considering issues 1 and 2, petitioner's claims on direct appeal that the trial court improperly denied the petitioner's motion to suppress his statements to police and the results of the search conducted at his home, the Court of Criminal Appeals reviewed the facts established at the suppression hearing and applied the following precedent:

On July 10, 1993, Memphis police officers had developed Tracey Davidson and Barry Smith as possible suspects in Kimberly Wilburn's murder. Around 9:00 that morning, several officers went to 735 Robeson, the appellant's residence, in order to locate Tracey Davidson and Smith. Sergeant Houston knocked on the door and two windows without receiving any response. In one window, he saw a head "stick up." Houston identified himself and requested that someone come to the door. About ten minutes later, the appellant opened the door. The appellant permitted the officers to look through the house for Tracey Davidson and Smith. The two suspects were discovered hiding in separate bedrooms in the house. Tracey Davidson and Smith were arrested at the scene and transported in separate cars to the police station.

After discovering that no adults were present, the officers transported the remaining four individuals, including the appellant, to the police station in a squad car. The squad car lacked door handles, which prohibited any exit absent outside assistance. The police officers testified that it was common practice to have "possible witnesses" ride to the station in cars without door handles. The appellant did not refuse to go, nor did he make any attempt to leave.

They arrived at the police station at approximately 9:15 a.m. The appellant and the other witnesses were asked general questions about themselves and about the crime. However, no information was gained concerning the death of Ms. Wilburn. After the appellant's interview was completed, the appellant was very talkative, was joking around with the others, and did not appear to be frightened or nervous. He was offered food, used the telephone, and went to the bathroom. The officers indicated

and the appellant's sister, LaTanya, verified that the appellant was free to leave the police station at any time.

Around 11:45 that morning, Tracey Davidson implicated the appellant, Barry Smith, Willie Davidson, and Antonio Byrd in the murder. It was only at this time that the police employed any type of restraint to detain the appellant. The appellant was then read his *Miranda* rights, however, prior to interviewing him, the police sought to have a parent or guardian present, because of the appellant's age. Police officers contacted LaTanya Taylor, the appellant's twenty year old sister, who was the temporary guardian of the appellant while their mother was out of town. LaTanya Taylor was present when the appellant confessed to the police. The appellant was advised of his rights prior to making his statement. Both he and LaTanya read, signed, and initialed both his statement and the Advice of Rights form.

After learning that a gun had been involved in the crimes, the police asked the appellant to give a second statement describing the use of the weapon in Ms. Wilburn's abduction. The appellant agreed and was again advised of his rights. At 6:12 p.m., the appellant gave a second statement. He then read, signed, and initialed this second statement. His sister, however, was not present during this second statement. Finally, the appellant was asked and agreed to sign a Consent to Search form in order to allow the police to search his house at 735 Robeson. Before signing the form, the appellant was advised of his rights with respect to this search. LaTanya Taylor signed the form the next morning when she met the police at the house prior to the search.

The next day, July 11, 1993, the police conducted a search of the appellant's home. The search revealed a white lab coat, two Missouri license plates (tag # LRY 195), a deposit slip with Kimberly Wilburn's name, check stubs, an address book, a key ring with twelve keys, a sunglasses case, a tube of lipstick, a radiology name tag inscribed with "Kimberly Wilburn," and a plastic picture wallet. The police also recovered a Tennessee license plate with the last digit "7."

The appellant contends that his initial contact with the police was an illegal seizure because it was without probable cause. Consequently, he argues, this illegal seizure "tainted" his subsequent confessions and consent to search, making them and any evidence flowing therefrom inadmissible. This argument is misplaced. We agree that the exclusionary rule, in order to deter unlawful police activity and maintain judicial integrity, prohibits the introduction of all evidence flowing from an unlawful arrest. *See Brown v. Illinois*, 422 U.S. 590, 601–03, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 485–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This prohibition extends to the indirect as well as the direct and the tangible as well as the testimonial products of such invasions. *Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). However, in the present case, the appellant's statements and consent did not result from an unlawful seizure.

The record clearly indicates that the appellant's statements and consent to search were obtained after his arrest at the police station. This arrest was supported by probable cause (Tracey Davidson's statement) and, therefore, was valid. At the suppression hearing, the trial court found that the appellant was not arrested when "he was brought down to be questioned as a witness in the ongoing investigation...." A determination of whether he was unlawfully seized at

this juncture is unnecessary. However, even if the initial contact was an unlawful seizure, evidence discovered through a subsequent legal arrest based on independent probable cause is admissible. *See New York v. Harris,* 495 U.S. 14, 19, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); *Murray,* 487 U.S. at 537, 108 S.Ct. 2529; *Segura v. United States,* 468 U.S. 796, 799, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The "independent source doctrine" permits the introduction of such evidence because the evidence does not result from the exploitation of the appellant's Fourth Amendment rights and because the State should not be put in a worse position simply because of unrelated police error or misconduct. *See Murray,* 487 U.S. at 537–38, 108 S.Ct. 2529; *Nix v. Williams,* 467 U.S. 431, 433, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Crews,* 445 U.S. 463, 471, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). *See also United States v. Calhoun,* 49 F.3d 231, 234 (6th Cir.1995)(defendant's voluntary consent to search, subsequent to illegal sweep of apartment, provided independent source for seizure of evidence). Accordingly, the trial court properly admitted the appellant's statements and evidence resulting from the search of his residence at 735 Robeson.

Next, the appellant argues that his statutory rights as a juvenile, specifically, Tenn.Code Ann. §§ 37–1–113—115 (1991) were violated when the police obtained his statements and the consent to search. It is established law in this state that once a juvenile has been transferred from juvenile court to criminal court to be tried as an adult, he is afforded only those protections that are available to similarly situated adults. *Colyer v. State,* 577 S.W.2d 460, 462–63 (Tenn.1979) [T]he per se exclusion of extrajudicial statements, obtained in violation of this chapter dealing exclusively with juvenile courts, is limited in scope to proceedings in that court. The extra protections of the juvenile code were not applicable at the suppression hearing in the appellant's adult trial. [*State v. Turnmire,* 762 S.W.2d 893 (Tenn.Crim. App.1988)] *Id.* at 897. Accordingly, the trial court did not err in denying the appellant's motion to suppress.

Further, the appellant argues that his consent to search was not a "knowing, intelligent, and voluntary waiver of his Fourth Amendment rights." We conclude that the trial court did not err in admitting the fruits of the search of the appellant's house. The trial court found that:

> The consent to search, again, I think that in light of the number of times that he had been advised of his rights and the circumstances that it was freely and voluntarily given, I think that he certainly had standing to give consent to search that house, and then, out of an abundance of caution the police had the sister to sign the consent form the following day, before they went into the house. And she arguably had standing as well, because she had been called specifically by the mother, prior to the mother leaving home, and she had been asked, and told to supervise/take care or/check up on the house and Mr. Taylor. So I think in every regard that the consent to search was proper.

The validity of a search depends upon whether, based on the totality of the circumstances, the consent was "voluntarily given and not the result of duress or coercion." *Schneckloth v. Busta-monte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Moreover, the trial court's finding that a search is consensual will not be overturned on appeal unless the evidence preponderates against the ruling. *State v. Woods,*

806 S.W.2d 205, 208 (Tenn.Crim.App. 1990); *Brady v. State,* 584 S.W.2d 245, 251–52 (Tenn.Crim.App.1979). In the present case, the record indicates that the appellant signed a consent to search form on July 10, 1993. The consent form clearly advised the appellant of his right to refuse the search. The appellant admitted that his permission was given voluntarily and without threats or promises of any kind. His sister also signed the form the next morning when the police arrived at the house to conduct the search. The proof clearly supports the trial court's finding that the appellant's waiver was valid. Accordingly, we find no merit to this contention.

*Taylor,* 1996 WL 580997 at *11–14.

This Court finds that the Tennessee courts correctly applied clearly established federal law in ruling petitioner's statements were correctly admitted into evidence. Analyzing the testimony and evidence presented under the dispositive cases of *Brown v. Illinois* and *Wong Sun v. United States,* the state courts determined that the Taylor's statements and consent to search did not result from an unlawful seizure. The Court of Criminal Appeals found the record clearly indicated that Taylor's statements and consent to search were obtained after his arrest at the police station.

The state court further determined that irrespective of any issues raised by Taylor's initial transportation to the police station, his subsequent arrest was supported by probable cause, namely co-defendant Tracey Davidson's statement, and was valid. The Court of Criminal Appeals made its independent probable cause determination by analyzing the facts and testimony under the holdings of *New York v. Harris, Segura v. United States,* and *United States v. Crews.*

■ With regard to issue one, petitioner presents no evidence and makes no argument that the Court of Criminal Appeals' determinations that his statements were voluntarily made after his valid arrest and did not result from an unlawful seizure involved a clearly erroneous application of federal law. Indeed, those determinations were straightforward and accurate applications of this controlling Supreme Court precedent. Furthermore, Taylor's conclusory allegations and argument that he was a "naive juvenile" who was "kidnapped," "oppressed," "bamboozled," and "coerced" into confessing do not demonstrate that the state court decision was an unreasonable determination of the underlying facts. Taylor does not address nor deny the pertinent facts demonstrating that he was not arrested at his home, but arrested after a co-defendant implicated him, that he was advised of his rights upon arrest, that his guardian was present, and that both he and his guardian initialed his statements. Issue 1 is without merit.

■ Issue 2, Taylor's challenge to the search of his home and evidence seized, does not state a viable habeas claim. The Supreme Court held in *Stone v. Powell* that,

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (footnotes omitted); *see also Pennsylvania Board of Probation & Parole v. Scott,* 524 U.S. 357, 362, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) ("We have emphasized repeatedly that the State's use of evidence obtained in viola-

tion of the Fourth Amendment does not itself violate the Constitution.") (citations omitted); *McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir.1996). Tennessee provides a viable procedure for challenging invalid search warrants and for seeking the suppression of illegally obtained evidence. Therefore, the claim is without arguable merit.

■ Taylor contends in issue 4d that counsel was ineffective at sentencing by failing to present psychological expert testimony. The Court of Criminal Appeals on direct appeal of the denial of Taylor's post-conviction petition determined the applicable Supreme Court precedent and applied it to the facts developed at the post-conviction hearing, stating as follows:

> Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Lockhart v. Fretwell*, 506 U.S. 364, 368–72, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The *Strickland* standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).
>
> In *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975), our supreme court determined that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. On post-conviction review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn.Crim. App.1995). Moreover, in reviewing a

counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *see also Hellard v. State*, 629 S.W.2d 4, 9 (Tenn.1982).

> A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. *See Butler v. State*, 789 S.W.2d 898, 899 (Tenn.1990); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn.Crim.App.1978). Notwithstanding this general rule, in *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999), our supreme court held that "[c]ases that involve mixed questions of law and fact are subject to *de novo* review." (citing *Harries v. State*, 958 S.W.2d 799, 800 (Tenn.Crim.App.1997)). Specifically, the supreme court determined that issues involving alleged deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact. *See Burns*, 6 S.W.3d at 461. Although we perform a *de novo* review of the issue, the appellant must still establish his or her allegations by clear and convincing evidence. *See* Tenn.Code Ann. § 40–30–210(f)(1997).

. . . . .

Next, the appellant complains that counsel failed to request psychological testing and as a result the appellant was deprived of the opportunity to present mitigating evidence at his sentencing hearing. At the post-conviction hearing, the appellant admitted that he had never been diagnosed with or treated for a mental illness. Nonetheless, he stated "Me being in prison, I believe I am kind

of mentally ill." He explained that "[m]y mental problem is being around a lot of pretenders." He further stated that "[he] don't need no psychologist" to testify about some kind of problem he may have.

Trial counsel testified that he retained a trial consultant to aid in preparation of the penalty phase. He worked with the trial consultant in gathering mitigating proof. Specifically, trial counsel recalled meeting with the appellant's family and that the trial consultant had "lined up a number of witnesses ... including ... a former teacher, a former park ranger... we put on ... a lot at the mitigation stage of the proceeding." Counsel testified that all mitigating witnesses were presented except for one, the appellant, who refused to testify. He stated that the appellant was examined by clinical psychologist John Hutson a month prior to the trial. Counsel decided not to present Dr. Hutson's testimony because "[Hutson] said there was nothing positive he could say... [H]e called me back after he interviewed the defendant and I asked him if there was anything good that he could say.... There was dead silence for about fifteen to twenty seconds and then he said, well, he's young."

The appellant admitted at the post-conviction hearing that he does not suffer any mental impairments. The appellant was examined by a reputable psychologist who could not find any significant "mitigating" evidence other than the appellant's youth. The proof is undisputed that the only mitigating evidence not presented by trial counsel was the testimony of the defendant, who refused to take the stand. When an appellant contends that trial counsel failed to locate potential witnesses in support of his defense, he bears the burden of presenting these witnesses at the post-conviction evidentiary hearing. *Black v. State*, 794

S.W.2d 752, 757 (Tenn.Crim.App.1990). If the appellant fails to present such witnesses, he fails to establish the prejudice prong mandated by *Strickland v. Washington, supra; Black,* 794 S.W.2d at 758. We conclude that the appellant has failed to establish this allegation of ineffectiveness by clear and convincing evidence. This issue is without merit.

*   *   *   *   *

After reviewing the appellant's allegations *de novo,* we conclude that the appellant has failed to show, by clear and convincing evidence, that he was denied the effective assistance of counsel. In doing so, we reiterate the findings of the post-conviction court:

> This Court finds that counsel not only rendered competent assistance to Petitioner within the range required by *Baxter v. Rose,* but that counsel provided Petitioner with an outstanding representation at trial and on appeal .... This court finds that the Petitioner asserts relief based on the fact that he was unsuccessful at trial. His attorney counseled Petitioner that his only defense was very risky and Petitioner chose to go to trial regardless. Petitioner's attorney also counseled him to testify at his sentencing hearing in order to show the jury remorse. Petitioner also chose not to heed his attorney's advice and refused to testify. At trial, Mr. Quinn put on a very zealous and vigorous defense and at the sentencing phase he utilized experts afforded by the court. All these devices were used for the Petitioner's benefit. Just because Petitioner lost his case is not a basis to find outstanding attorneys ineffective. The Eighth Circuit in *Robinson v. United States,* stated in pertinent part, "Hindsight can always be utilized by those not in the fray so as to case doubt on trial tactics a lawyer has used." 448 F.2d 1255, 1256 (8th Cir.1971).

Accordingly, relief based upon ineffective assistance of trial counsel is denied. *Taylor,* 2000 WL 714387 at *2–5.

As the state court noted, the test for determining whether petitioner received ineffective assistance of counsel is set forth by *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, and a petitioner must show:

1. deficient performance by counsel; and

2. prejudice to the defendant from the deficient performance.

*Id.* at 687, 104 S.Ct. 2052. A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

To demonstrate prejudice, petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Additionally, however, in analyzing prejudice, the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. *Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838 (1993)(citing *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). "Thus an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Fretwell,* 506 U.S. at 369, 113 S.Ct. 838.

In construing this claim of ineffective assistance under the *Strickland* analysis, the Tennessee Supreme Court found petitioner failed to demonstrate any prejudice from counsel's performance. The decision of the Tennessee state court is not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). The "contrary to" clause is inapplicable because the state court relied on the relevant Supreme Court precedent, *Strickland* and *Fretwell.* The Court of Criminal Appeals applied that clearly established precedent correctly and in an objectively reasonable manner.

Petitioner states in conclusory fashion that "his attorneys failed to utilize his mental status at the mitigation stage of his trial." Petitioner offers no factual basis whatsoever to support his contention. Accordingly, the decision of the Tennessee Court of Criminal Appeals also did not "result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's factual findings are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. *Id.,* § 2254(e)(1).

Therefore, as it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. The petition is DISMISSED.

## IV. *APPEAL ISSUES*

■ The Court must also determine whether to issue a certificate of appealabil-

ity. Twenty-eight U.S.C. § 2253(c) provides:

(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from-

    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

    (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir.1997), the Sixth Circuit held that district judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, Title I, § 102, 110 Stat. 1220 (Apr. 24, 1996). The Court also held that the AEDPA codifies in amended § 2253 the standard for issuing a certificate of probable cause found in prior § 2253, which was essentially a codification of *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). *See Lyons*, 105 F.3d at 1073.

[P]robable cause requires something more than the absence of frivolity ... and the standard for issuance of a certificate of probable cause is a higher one

than the 'good faith' requirement of § 1915.... [A] certificate of probable cause requires petitioner to make a substantial showing of the denial of [a] federal right. [A] question of some substance, or a substantial showing of the denial of [a] federal right, obviously [does not require] the petitioner [to] show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot*, 463 U.S. at 893, 103 S.Ct. 3383 (internal quotations and citations omitted). In this case, for the reasons discussed above, the petitioner's claims are either untimely, barred by his procedural default, non-cognizable, or without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore denies a certificate of appealability.

██ Also in regards to any appeal, the United States Court of Appeals for the Sixth Circuit has held that the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), does not apply to appeals of orders denying § 2254 petitions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir.1997). *Cf. McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir.1997)(instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2254 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917,[5] the petitioner must seek per-

---

5. The fee for docketing an appeal is $100. *See* Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari, $5 shall be paid to the

mission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure (F.R.A.P.). *Kincade*, 117 F.3d at 952. If the motion is denied, the petitioner may renew the motion in the appellate court.

■ F.R.A.P. 24(a) states in pertinent part that:

A party to an action in a district court who desires to proceed on appeal *in forma pauperis* shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith, and to deny the certificate if the appeal would be frivolous. In this case, for the same reason that the Court denied a certificate of appealability the Court determines that any arguments he might present on appeal to the contrary would lack even arguable merit. The Court thus determines that any appeal in this case would not be taken in good faith. It is therefore certified, pursuant to F.R.A.P. 24(a), that any appeal in this matter by this petitioner is not taken in good faith and he may not proceed on appeal *in forma pauperis*.

clerk of the district court, by the appellant or petitioner.